**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **JOHNNY BERNAL,** | § | |
| **on Behalf of Himself and Others** | § | |
| **Similarly Situated** | § | |
| | § | **CIVIL ACTION NO. 5:07-cv-00695-XR** |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **VANKAR ENTERPRISES, INC. d/b/a** | § | |
| **BABCOCK BAR, CHICAGO BAR, INC.,** | § | |
| **and TDS ENTERTAINMENT, INC. d/b/a** | § | |
| **DIXIE'S COUNTRY BAR** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S MOTION FOR CONDITIONAL CLASS CERTIFICATION AND FOR NOTICE TO PUTATIVE CLASS MEMBERS

### I. SUMMARY

Johnny Bernal ("Bernal" or "Plaintiff") brought this collective action because Defendants fail to pay their servers minimum wage required by the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* In particular, Defendants violate the FLSA's minimum wage provision by failing to adhere to the "tip credit" requirements contained in Section 3(m) of the FLSA and by requiring their servers to contribute to an invalid tip pool. Defendants apply their tip pool policy uniformly as to all of their servers. Accordingly, Bernal, and all similarly situated employees[1] are entitled to their unpaid minimum wages, liquidated damages, attorney's fees and costs, and the other similarly situated employees should receive court-approved notice of this action.

---

[1]As of the date of this motion, ten (10) other servers have 'opted in' to this suit.

## II. FACTUAL BACKGROUND

Defendants own and operate three (3) bars in San Antonio, Texas – Babcock Bar, Chicago Bar, and Dixie's Country Bar (collectively "the Bars"). Bernal worked as a bartender at each of the Bars. (*See* Ex. 1 - Bernal Dec. ¶ 2) As a bartender, Defendants did not pay Bernal (or the other bartenders) the required minimum wage; rather, Defendants paid Bernal (and the other bartenders) a direct wage of $2.13 per hour. In addition, Defendants allowed Bernal to keep a portion of the tips he received from Bar patrons. Therefore, Defendants took a 'tip credit' against their minimum wage obligations pursuant to 29 U.S.C. 203(m).

As a tipped employee, Bernal could only be required to contribute to a tip pool from which other "customarily tipped employees" would draw. 29 U.S.C. § 203(m). However, Defendants required Bernal and its other servers to share their tips with members of management and a cleaning crew who, for FLSA purposes, were not eligible to participate in the tip pool. (*See* Bernal Dec. ¶ 3 and Ex. 2 - Richter Dec. ¶6) Because neither the cleaning crew nor members of management were eligible to participate in any tip pool, Defendants violated the tip credit requirements of Section 3(m) of the FLSA.

## III. ARGUMENT AND AUTHORITY

### A.    THE FLSA AUTHORIZES COLLECTIVE ACTIONS.

Where the employer's violation of the FLSA is alleged to be widespread, aggrieved employees have the right to bring an action "for and in behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). Actions pursued in such a representative capacity are

referred to as "collective actions."[2]   Federal courts in Texas have a long tradition of using the collective action procedure to protect employees who are denied their proper wages.  *See*, *e.g.*, *Riojas v. Seal Produce, Inc.*, 82. F.R.D. 613, 619 (S.D. Tex. 1979)(since the FLSA was "meant to aid injured parties," it is "only sensible that procedures facilitating this intent [such as providing notice to potential class members] would be favored.").

Perhaps even more importantly, the Supreme Court has expressly held that courts may implement the collective action procedure by facilitating the issuance of notice to potential class members.  *Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989).  Commenting favorably upon collective actions, the Supreme Court noted:

> "A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources.  The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity."

*Sperling*, 493 U.S. at 170.  However, these benefits depend upon the potential class members' receipt of a notice which is "timely, accurate and informative."  *Blake v. Colonial Savings, FA*, 2004 WL 1925535 (S.D. Tex. August 16, 2004)(J. Harmon)(*citing Sperling*, at 172).

**B**.     **THE LEGAL STANDARD (SIMILARLY SITUATED).**

The Fifth Circuit has identified two different procedures used by courts to determine whether to facilitate notice.  *Mooney v. Aramco Services, Co.*, 54 F. 3d 1207, 1213 (5th Cir. 1995).  The first approach – the *Shushan* method – is premised upon a class action filed under Federal Rule of Civil

---

[2]As discussed *infra*, a collective action has important procedural distinctions from a class action brought under Federal Rule of Civil Procedure 23.  For example, unlike the traditional Rule 23 class action, "no employee shall be a party plaintiff to [a collective action] unless he gives his consent in writing . . . and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b)*; see also LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 206 (5th Cir. 1975)(distinguishing the "opt-in" collective action from the "opt-out" Rule 23 class action.).  Accordingly, certification of a collective action gives potential class members: 1) notice of the suit; and 2) the opportunity to protect their rights by filing a consent.

Procedure 23 and espouses the view that the court should look to the familiar concepts of "numerosity," "commonality," "typicality" and "adequacy of representation" to determine whether a class should be certified. *Mooney,* 54 F. 3d at 1214 (*citing Shushan v. University of Colorado*, 132 F.R.D. 263 (D. Colo. 1990)).

The second approach – the "two-step" method – involves a dual step analysis of the FLSA § 16(b)'s "similarly situated" requirement. *Mooney*, 54 F. 3d at 1214. The two-steps consist of a lenient "conditional certification" decision, followed by a more rigorous certification decision after discovery is complete. *Mooney,* 54 F. 3d at 1214.

Notably, *every* appellate court to consider the issue has rejected the underlying premise of *Shushan* – that Rule 23 should apply to collective actions under FLSA § 216(b).[3] The Fifth Circuit has held that "Rule 23 'opt-out' class actions . . . cannot be reconciled with § 16(b) suits [and] are not permissible" in such actions. *Price v. Maryland Cas. Co.*, 561 F. 2d 609, 611 (5th Cir. 1977). Rather, the FLSA collective action procedure created by § 216(b) "constitutes a congressionally developed alternative to the Rule 23 procedures." *Donovan v. University of Texas at El Paso*, 643 F.2d 1201, 1206 (5th Cir. 1981).

In contrast, appellate courts (as well as the vast majority of district courts) have consistently approved of the two-step method developed in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J.

---

[3]*See, e.g., De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3rd Cir. 2003)(noting that FLSA cases *cannot* be certified under Rule 23 and that Rule 23 is *inapplicable* to FLSA actions); *Theissen v. GE Capital Corp.*, 267 F. 3d 1095, 1105 (10th Cir. 2001)("to interpret the 'similarly situated' standard by simply incorporating the requirements of Rule 23 . . . would effectively ignore Congress' directive."); *Grayson v. K Mart Corp.*, 79 F. 3d 1086, 1096 n. 12 (11th Cir. 1996)(the requirements for pursuing a 216(b) class action are independent of, and unrelated to, to requirements for a class action under Rule 23 . . .); *King v. GE Co.*, 960 F.2d 617, 621 (7th Cir. 1992); *E.E.O.C. v. Pan American World Airways, Inc.*, 897 F.2d 1499, 1504 (9th Cir. 1990)(FLSA section 16(b) creates a vehicle, "wholly apart from Fed.R.Civ.P. 23, for employees to bring . . . class actions for damages"); *see also, Villatoro v. Kim Son Restaurant, L.P.*, 286 F.Supp.2d 807, 809-10 (S.D. Tex. 2003)(noting every appellate court to have addressed the issue has rejected *Shushan*'s premise).

1987).  *See, e.g., Theissen*, 267 F. 3d at 1105; *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F. 3d 1208, 1219 (11th Cir. 2001).[4]  Under this approach, the district court makes an early decision as to whether notice of the action should be given to potential class members based on a preliminary showing of similar situations.  *Mooney*, 54 F. 3d at 1214.  These cases make it clear that the "similarly situated" requirement is "considerably less stringent" than Rule 23's requirements.  *See, e.g., Grayson*, 79 F.3d at 1096.

This Honorable Court has considered this precise issue and has adopted the *Lusardi* two-step approach.  *See, Neagley vs. Atascosa County EMS*, 2005 WL 354085 (W.D. Tex. Jan. 7, 2005)("The two-stage approach seems to be the method of analysis more generally accepted and is the one that the Court will apply.")[5]  *See also, Butler v. The City of San Antonio*, 2003 WL 22097250, (W.D. Tex. August 21, 2003)("...the Court concludes that Plaintiffs have adequately established, through their pleadings, affidavits, and averments, that their job requirements and remuneration are sufficiently alike so as to warrant conditional certification of the class.  As such, the court will allow Plaintiffs to notify the class members of the pending suit in order to allow them to join.").

## C.      When Are Potential Class Members "Similarly Situated"?

"Similarly situated," in § 216(b) parlance, does not mean "identically situated."  *See Riojas*, 82 F.R.D. at 616; *see also, Tucker v. Labor Leasing, Inc.*, 872 F.Supp. 941, 947 (M.D.Fla. 1994).  Therefore, "[w]hether at the notice stage or on later review, collective action certification is not precluded by the fact that the putative plaintiffs performed various jobs in differing departments and

---

[4]As Judge Lynn recognized, the two-step method is "the prevailing test among the federal courts . . . ."  *Barnett v. Countrywide Credit Industries, Inc.*, 2002 WL 1023161, at *2  (N.D. Tex. May 21, 2002).

[5]A copy of the *Neagley* opinion is attached as Exhibit 3.

locations." *Donohue v. Francis Services, Inc.*, 2004 WL 1161366, (E.D.La. May 24, 2004).

Instead, a FLSA class determination is appropriate when there is "a demonstrated similarity among the individual situations . . . some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Crain v. Helmrich & Payne Int'l Drilling Co.*, 1992 WL 91946, *2 (E.D.La. April 16, 1992)(certifying class of workers who were required to perform work prior to and after their paid shifts).  Thus, a court can foreclose a plaintiff's right to proceed collectively only if "the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice." *Id.*; *see also Wyatt v. Pride Offshore, Inc.*, 1996 WL 509654, *2 (E.D.La. Sept. 6, 1996).  In making this determination, "the district court should satisfy itself that there are other employees . . . who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Dybach v. Fla. Dept. of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

To impose a strict standard of proof at the notice stage would unnecessarily hinder the development of collective actions and, thereby, would serve to undermine the "broad remedial goals" of the FLSA.  *Garner v. G.D. Searle*, 802 F.Supp. 418, 422 (M.D. Ala. 1991);  *Sperling v. Hoffmann-LaRoche Inc.*, 118 F.R.D. 392, 407 (D.N.J.), *aff'd*, 862 F.2d 439 (3d Cir. 1988), *aff'd*, 493 U.S. 165 (1989)("Notice to absent class members need not await a conclusive finding of 'similar situations.'").  Instead, the record need only be "sufficiently developed . . . to allow court-facilitated notice" based upon "substantial allegations." *Id*; *see also Church v. Consolidated Freightways, Inc.*, 137 F.R.D. 294 (N.D. Cal. 1991), or "some factual support." *Belcher v. Shoney's Inc.*, 927 F.Supp. 249, 251 (M.D. Tenn. 1996).  Thus, the court's decision is usually made "using a fairly lenient standard" and is "based only on the pleadings and any affidavits which have been submitted."

*Mooney,* 54 F. 3d at 1214.   Evaluation under the lenient "similarly situated" standard "typically results in 'conditional certification' of a representative class" and the issuance of a court approved notice.  *Id.*

Allowing early notice and full participation by the opt-ins, "assures that the full 'similarly situated' decision is informed, efficiently reached, and conclusive." *Sperling v. Hoffmann-LaRoche Inc.*, 118 F.R.D. at 406.   Once the opt-in period is complete, the Court will have the benefit of knowing the actual makeup of the collective action – rather than making a decision based on a hypothetical class.  *See also*, *Gardner v. Associates Commercial Corp.*, Civil Action H-00-3889, *6 (S.D. Tex. December 20, 2000)(J. Harmon)("until those choosing to opt-in have done so, a more exact definition of 'similarly situated' will remain difficult").  Thus, early notice will help the court to manage the case because it can "ascertain the contours of the action at the outset." *Sperling*, 493 U.S. at 172-73.

     **D.**    **The Issuance of Notice is Proper in this Case Because the Potential Class Members are Similarly Situated in Terms of Job Duties and Pay Provisions.**

In this case, Bernal's complaint provides substantial allegations regarding the existence of Defendants' illegal payment scheme. ( *Docket Entry No. 1*)  Plaintiff describes Defendants' illegal tip pool, explains how the tip pool was administered by Defendants, and attests to the fact that such practice was uniformly and consistently applied to all members of the class. *Id.* Given the detailed nature of the complaint, this Court would be justified in approving notice based *solely* on the allegations in the Plaintiffs' complaint.

In fact, this Honorable Court conditional certified *sua sponte* the *Neagley* case, based solely on the allegations raised in plaintiff's complaint. *Neagley*, at *3.  Therefore, the Court would be acting well within its discretion to grant Bernal's request solely on the basis of the allegations raised

in his complaint. However, Bernal has also provided substantial evidentiary support for this motion through his own declaration (Ex. 1), as well as the declaration of Alisa Richter (Ex. 2). These declarations more than adequately establish that there are other servers who may wish to "opt-in" and that they are "similarly situated" as to their job requirements and pay provisions. Therefore, Bernal readily meets the liberal standard for court facilitation of a FLSA collective action. *Butler v. San Antonio, 2003 WL 22097250* (N.D. Tex. Aug. 21, 2003). *See also*, *Crain*, 1992 WL 91946 (E.D. La.); *Whitworth v. Chiles Offshore Corp.*, 1992 WL 235907 (E.D. La. Sept 2, 1992).

      1.    *There are Other Similarly Situated Employees Who May Desire to Opt In.*

That other employees desire to opt-in to this action is manifest from the Plaintiff's evidence, in addition to the fact that ten (10) other claimants have already opted into this case even before the issuance of notice. Moreover, Bernal testifies that he has spoken with other servers who were similarly affected by the tip pool policy, and that others may desire to opt-in. (Ex. 1 - Bernal Dec. ¶5). Accordingly, it is clear that other servers may desire to opt-in.

      2.    *The Other Potential Class Members are Similarly Situated With Respect to Their Job Requirements and Pay Provisions.*

In the case at bar, the alleged violations were suffered across the board by Defendants' servers. These violations arise from a company-wide policy or practice of Defendants' operations of an invalid tip pool. This implementation and operation of an invalid tip pool, enforced uniformly by Defendants' management, establishes a basic factual scenario experienced not only by the Plaintiff, but by all others employed as servers by Defendants.

      a)    *All of Defendants' Servers Performed The Same Or Similar Duties*

While courts look to similarity in working conditions in evaluating the similarly situated issue, similarity in job duties is of *substantially less* significance where the employees at issue are

admittedly non-exempt. *See Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 364 (M.D. Ala. 1999). Because no inquiry must be made into the relevant job duties to determine whether an exemption from the minimum wage requirements exists, "the job requirements of the Plaintiffs' and the putative plaintiff class members' employment positions, therefore, are not in issue." *Id.* Therefore, courts have consistently rejected the argument that a class "is problematic because it includes individuals from various positions, locations, etc.; the law is plain that this does not undermine the 'similarly situated' requirement." *Donohue v. Francis Services, Inc.*, 2004 WL 1161366, *3 (E.D. La. May 2004)(citations omitted).

Nonetheless, it is clear that Plaintiff and the other servers performed similar duties. Most importantly, all of Defendants' servers interacted with customers, were all paid less than minimum wage, and were required to contribute to the invalid tip pool – thus triggering Defendants' obligation to pay the full minimum wage for each hour worked and forego the FLSA's tip credit.

> b)     *All Servers Are Paid in the Same Fashion and Required to Contribute to the Tip Pool by the Same Policy.*

As set forth above, all of the servers were paid less than the minimum hourly wage just like Bernal. (*See* Exhibits 1-2). In addition, Plaintiff is aware that the other servers were also victimized by Defendants' tip pool policy. *Id.*

> 3.     *Bernal Has Carried His Burden of Demonstrating a Reasonable Basis for a Collective Action.*

Collective action authorization and notice to the class is well warranted here, as Plaintiff has more than demonstrated a "reasonable basis" for the class allegations. *See Grayson*, 79 F.3d at 1097. Here, Plaintiff has provided detailed allegations in his complaint and has amply supported the allegations with his declaration.

For example,

- The Complaint avers in detail Bernal's claims, including the common job requirements, pay provisions, and Defendants' policy of paying its servers less than the minimum wage; (*See* Doc. No. 1)

- Bernal's and Richeter's declarations demonstrate that other employees performed the same relevant job duties, under the same pay provisions, and were subject to the same unlawful tip pool; (*See* Exhibits 1-2)

- The declarations amply support the contention that non-service employees, i.e. the cleaning crew, were not eligible tip pool participants because they never came in contact with Defendants' customers; *Id.* and

- The declarations also demonstrate that members of management received part of their tips. *Id.*

Such a showing of detailed allegations supported by an employee declaration more than satisfies the "lenient" standard for collective action notice. *Mooney*, 54 F.3d at 1213-14; *Metz v. Treetop Enters, Inc.*, 1999 U.S. Dist. LEXIS 18386, *7 (N.D. Ala. 1999)(plaintiffs need only show a "colorable basis for a representative suit"); *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)(a "modest factual showing" sufficient to justify notice). Accordingly, Bernal has provided substantial evidence that Defendants' illegal policy of requiring its bartenders to tip out non-tipped employees applied to all of Defendants' servers and that notice is proper to the class.

Such a showing that employees are similarly situated *and* subject to a uniform policy more than justifies authorization of a collective action and notice to all who worked as Servers for Defendants during the last three (3) years. *Cf. Baum v. Shoney's Inc.*, 1998 U.S. Dist. LEXIS 21484, *3, 5 Wage & Hour Cases 2d (BNA) 127 (M.D. Fla. 1998)(need not show victimization by single decision, policy, or plan, but such a showing is probative in determining whether potential class members are similarly situated).

Accordingly, notice is properly sent to:

"All current and former bartenders and servers employed by Defendants at any time from August 21, 2004 to the present."

Similar classes have been approved by courts in the Fifth Circuit.  *See, e.g.*, *Ortiz v. Rain King, Inc.*, 2003 WL 23741409, *1 (S.D. Tex. Mar. 10, 2003) (granting notice to all current and former employees within a three-year period who were paid straight time for overtime); *Alba v. Madden Bolt Corp.*, 2002 WL 32639827, *1 (S.D. Tex. June 5, 2002) (granting notice to all current and former hourly employees within a three-year period); *Aguilar v. Complete Landsculpture, Inc.*, 2004 WL 2293842, *6 (N.D. Tex. Oct. 7, 2004)(granting notice to all former and current employees paid a set amount for ten-hour "blocks").

So that notice may be given, Bernal requests that this Court approve the Notice attached as Exhibit 4.  Due to the age and transient nature of the class members, Bernal respectfully requests an opt-in period of sixty (60) days.

**E.      The Need for Expedited Action.**

In a collective action under the FLSA, when additional plaintiffs file their consents with the court, the filing does not "relate back" to the original filing date of the complaint for the purposes of the statute of limitations.   29 U.S.C. § 256.   Therefore, every day that passes will result in a progressive diminishing of the amount of wages potential plaintiffs could recover in this action.   It may eliminate the claims of some potential plaintiffs completely.   To minimize the prejudice the potential class members are suffering on a daily basis, Bernal requests the Court authorize the issuance of a notice to all current and former servers employed by Defendants during the three (3) year period preceding the filing of this suit to the present.

## IV. CONCLUSION

Bernal has more than met the lenient burden for the issuance of court-approved notice.   Each day that passes is another day's pay that the workers victimized by Defendants' unlawful tip pool policy will never recover.   Accordingly, Bernal respectfully requests that the Court: 1) conditionally certify this case as a collective action; 2) order Defendants to furnish Plaintiff's counsel with a complete and accurate list of the names, last known addresses and telephone numbers of the potential class members within 14 days from the date of the Court's order; 3) approve the issuance of notice in the form attached hereto as Exhibit 4;  and 4) all other relief to which Plaintiff may show himself justly entitled.

Respectfully submitted,

*/s/ Robert R. Debes, Jr.*

By: _____

ROBERT R. DEBES, JR.
State Bar No. 05626150
Federal ID No. 12308
17 South Briar Hollow Lane, Suite 302
Houston, Texas 77027
Telephone: (713) 623-0900
Facsimile: (713) 623-0951
bdebes@debeslaw.com

OF COUNSEL:
**DEBES LAW FIRM**

RICHARD J. BURCH
State Bar No. 24001807
Federal ID No. 21615
1415 Louisiana, Suite 2125
Houston, Texas 77002
Telephone: (713) 877.8788
Facsimile: (713) 877.8065
rburch@brucknerburch.com

OF COUNSEL:
**BRUCKNER BURCH, PLLC**

**COUNSEL FOR PLAINTIFFS**

**<u>CERTIFICATE OF CONFERENCE</u>**

I hereby certify that I have discussed the filing of this motion and the relief requested herein with Defendants' counsel, Edward Pina, in a good faith attempt to resolve the matters requested by this Motion. I certify that no agreement could be reached and that Defendants are opposed to this motion.

*/s/ Robert R. Debes, Jr.*

_____
Robert R. Debes, Jr.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing instrument was forwarded to all counsel of record via ECF delivery, facsimile, by courier, by certified mail (return receipt requested), and/or first class mail delivery on this the 21st day of December, 2007 as follows:

Edward L. Piña
The Arial House
8118 Datapoint Drive
San Antonio, Texas 78229


*/s/ Robert R. Debes, Jr.*
_____
ROBERT R. DEBES, JR.