UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JOHNNY BERNAL, *et al.*, ] | |
| ] | |
| *Plaintiffs*, ] | **Case No. SA-07-CA-0695-XR** |
| ] | |
| v. ] | |
| ] | |
| VANKAR ENTERPRISES, INC. d/b/a, ] | |
| BABCOCK BAR, *et al*. ] | |
| ] | |
| *Defendants*. ] | |
| _____] | |

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

The Fair Labor Standards Act (FLSA) requires employers to: (1) pay the minimum wage; (2) pay overtime; and (3) keep accurate records of its employees' hours and earnings. 29 U.S.C. § 206, 207(a) & 211(c). The defendants ("the Bars") do not do any of these things. Because many of defendants' violations are beyond reasonable dispute, Plaintiffs move for partial summary judgment.

**1.     Facts.**

The Bars[1] are owned and operated by Patrick Karam. Karam sets and enforces the same pay policies at all of his bars. Exhibit A, *Karam Depo.*, p. 23, l. 5-8. All the Bars' employees are paid through a single payroll company – Bar Staff Management, Inc. (Bar Staff). *Karam Depo.*, p. 30, l. 13-22. Bar Staff is the management company for all the employees at the Bars. *Id.* Bar Staff, like the Bars, is owned by Karam. *Id.*

---

[1]     The Bars are TDS Entertainment, Inc. d/b/a Dixie's Country Bar, Chicago Bar, Inc. d/b/a Chicago Bar, and Vankar Enterprises, Inc. d/b/a Babcock Bar.

1

Plaintiffs worked as bartenders (servers) in one or more of Karam's bars. Regardless of which location they normally worked in, Plaintiffs were subject to being assigned to any one of the Bars' by Karam. *Karam Depo.*, p. 34, l. 11-18. Indeed, Johnny Bernal and Alisa Richter worked at all the locations at one time or another. Exhibit B, *Bernal Depo.*, p. 56, 5-8; Exhibit C, *Richter Depo.*, p. 42, l. 4-11.

The Bars paid Plaintiffs $2.13 per scheduled hour.[2] *See* Exhibit D, Paychecks for Various Plaintiffs.[3] The Bars paid this same rate for overtime hours. *Id.* In addition to their wages, Plaintiffs received tips.

At the end of each working day, Plaintiffs' tips were pooled with the other servers. The Bars take 4% of their servers' credit card tips as a charge fee. Approximately $20 - $25 worth of tips is taken to pay the cleaning crew plus $20 to pay the "door guy." Exhibit E, *Neafie Depo.*, p. 73, 24-25. In addition, servers must surrender 5% of the day's total sales for as a "general fee." *Karam Depo.*, p. 34, l. 24 – p. 40, l. 5.

The 5% general fee taken from each bar's tip pool is lumped together with the other bars' and delivered to Karam in cash. *Karam Depo.*, p. 79, l. 7-10; p. 60, l. 6 – 10. Karam keeps this tip pool money until he thinks it is appropriate to redistribute it. *Id.*, p. 60, l. 14-16. Under this discretionary "system," Karam may keep the tips for "a week, sometimes, two weeks, sometimes thirty days." *Id.*, p. 40, l. 3-5.

The Bars did not create nor maintain records showing whether, or even to whom, this tip pool money was actually distributed. *See, e.g., Karam Depo.*, p. 60, l. 14 – p .61, l. 4. However,

---

[2] The Bars did not pay Plaintiffs for all the hours actually worked, merely those scheduled. However, because the facts regarding this aspect of Plaintiffs' claim are in dispute, summary judgment is not sought on this issue.

[3] Because the checks themselves are voluminous, Plaintiffs have only included a sample of the checks. The checks were selected because each of them shows, on its face, a minimum wage or overtime violation.

a portion of the 5% general fee was paid to Paul Neafie. *Neafie Depo.*, p. 43, 14. Neafie was "the manager of Babcock Bar" and made employee work schedules. *See* Exhibit F, Ds' Initial Disclosures, p. 2. In addition, a manager named "Manny" received a portion of the tip pool money. *See Karam Depo.*, p. 28, l. 4-20 (describing Manny's authority to hire and fire); *Richter Depo.*, p. 48, l. 11 – p. 49, l. 1 (Manny got a share of the tip pool).

The Bars maintained a written policy requiring Plaintiffs to cover cash register shortages and the tabs of customers who failed to pay. *See* Exhibit G, Policy Regarding Shortages & Walkouts; *Karam Depo.*, p. 34, l. 19-23. In applying this policy, the Bars routinely took this money from Plaintiffs' tips. *See, e.g., Bernal Depo.*, p. 46, l. 6 – p. 47, l. 13; *Richter Depo.*, p. 168, l. 10 – p. 169, l. 3. As set forth below, the Bars have violated the FLSA.

**2.      The FLSA's Requirements.**

From September 1, 1997 until July 23, 2007, the FLSA required a minimum hourly wage of $5.15. From July 24, 2007 to July 24, 2008, the minimum wage was $5.85.[4] The FLSA also requires employers to pay overtime to each employee who works more than 40 hours in a week. 29 U.S.C. § 207(a). This overtime must be at a rate that is at least 1.5 times the employee's regular rate. *Id.* A tipped employee's regular rate includes any tip credit taken by the employer. 29 C.F.R. § 531.60

Employers must also keep records of the hours worked by, and wages paid to, their employees. 29 U.S.C. § 211(c). Additional records are required for tipped employees. 29 C.F.R. § 516.28. Failure to keep adequate records can preclude an employer from establishing an entitlement to a tip credit. *See also Bingham v. Airport Limousine Service*, 314 F.Supp. 565, 572 (W.D.Ark. 1970) (failure to keep records precluded employer for showing entitlement to

---

[4]      The minimum wage is now $6.55 per hour – but this is irrelevant for our purposes here.

Section 203(m) tip credit); *Brennan v. Ledet*, 1974 WL 1088, at *1 (E.D. La. Mar. 1, 1974) (same).

**3.     The Bars Failed to Pay The Minimum Wage.**

   **A.     The Bars Failed to Pay the Applicable Minimum Wage.**

The Bars only paid their servers $2.13 per hour. The Bars know the minimum wage is higher than $2.13 an hour. *Karam Depo.*, p. 20, l. 10-13. They claim to rely on the tips received by servers to make up the difference between $2.13 and the applicable minimum wage.[5] *Karam Depo.*, p. 20, l. 10-13. While the FLSA does permit a tip credit provided certain conditions are met, the Bars cannot establish the necessary elements of this affirmative defense.

In fact, the Bars repeatedly violated the FLSA's minimum wage requirements even if a credit for tips was permissible (and it is not). For example, with or without tips, Plaintiffs Arriaga, Bernal, Bowers, Chandonnet, Denn, Elliott, Littlejohn, Morrison, Oelfke, Richter, and Rodriguez all earned less than the minimum wage in one or more workweeks. *See* Exhibits D & H. The Bars owe Plaintiffs the difference between the wage actually paid and the minimum wage for each hour worked.

   **B.     The Bars Cannot Claim a Tip Credit.**

The Bars bear the burden of proving their entitlement to a tip credit. *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979); *Reich v. Priba Corp.*, 890 F.Supp. 586, 595-96 (N.D. Tex. 1995); *Chisolm v. Gravitas Restaurant, Ltd.*, 2008 WL 838760, at *3 (S.D. Tex. March 25, 2008). The requirements are strictly construed. *Bursell v. Tommy's Seafood Steakhouse*, 2006 WL 3227334, at *1 (S.D.Tex. Nov. 3 2006) (*citing Chung v. New

---

[5]     *See Bernal v. Vankar Enterprises, Inc.*, 2008 WL 791963, at *2 (W.D. Tex. March 24, 2008) ("Defendants originally denied taking advantage of the tip credit altogether [but] now assert that they took the tip credit as permitted under 29 U.S.C. § 203(m).").

*Silver Palace Rest., Inc.*, 246 F.Supp.2d 220, 229 (S.D.N.Y. 2002)). "Unless the employer satisfies its burden of showing the applicability of the tip credit, the employees are 'entitled to the full minimum wage for every hour worked.'" *Smith v. Noso, Inc.*, 2007 WL 2254531, at *4 (M.D. Fla. Aug. 3, 2007)(*citing Barcellona*, 597 F.2d at 467).

In order to claim a tip credit, an employer must inform his employees of the FLSA's tip credit provisions.  29 U.S.C. § 203(m)(2).  In addition, the tipped employees must be permitted to retain all their tips – either individually or through a valid tip pool.  *Id.*; *see also, Priba Corp.*, 890 F.Supp. at 595-96.  Failing either of these tests precludes application of the tip credit.  *Id.*

>   1.   *The Bars Failed to Inform Plaintiffs of the Tip Credit Provisions.*

Karam does not tell servers how they will be paid.  *Karam Depo.*, p. 67, l. 20 – p. 68, l. 20.  To his knowledge, no-one informs servers of the tip credit provisions of the FLSA.  *Id.*  Certainly no-one other than Karam is responsible for informing the bars' servers how they will be paid.  *Id.*  Because the bars failed to inform Plaintiffs of the FLSA's tip credit provisions, the bars cannot claim a tip credit.  *See,* 29 U.S.C. § 203(m); *Barcellona*, 597 F.2d at 467-78; *Richard v. Marriott Corp.*, 549 F.2d 303, 305 (4th Cir. 1977).

>   2.   *Plaintiffs Were Not Permitted to Retain All Their Tips.*
>
>      a.   *The Bars' Tip Pool Included Managers.*

If the tipped employees are required to share their tips with any employee who does not customarily and regularly receive tips, the employer cannot claim any tip credit.  *See, e.g., Myers v. Copper Cellar Corp.*, 192 F.3d 546, 548-49 (6th Cir. 1999); *Chan v. Triple 8 Palace, Inc.*, 2006 WL 851749, at *14 (S.D.N.Y. March 30, 2006); *Ayers v. 127 Restaurant Corp.*, 12 F.Supp.2d 305, 308-09 (S.D.N.Y. 1998); *Bonham v. Copper Cellar Corp.,* 476 F.Supp. 98 (E.D. Tenn. 1979).  "Where management employees participate in a tip pool, the pool is invalid."  *See*

*Morgan v. SpeakEasy, LLC*, 2007 WL 2757170, at *17 (N.D. Ill. Sept. 20, 2007). Similarly, the presence of janitors invalidates a tip pool. *See, e.g., Kilgore v. Outback Steakhouse,* 160 F.3d 294, 301 (6th Cir.1998).

As set forth above, the Bars created a tip pool which included at least two managers – Manny and Paul Neafie. Among other things, these managers had the authority to create work schedules and to hire and fire. *See Karam Depo*., p. 28, l. 4-20 & Exhibit F. Though he denies it, the Bars' tip pool also included Karam himself. *Richter Depo.*, p. 48, l. 11-25. Nonetheless, because it is undisputed that management employees such as Manny and Paul Neafie participated in the tip pool, the Bars' cannot claim a tip credit. *Ayers,* 12 F.Supp.2d at 308-09.

Moreover, manager Neafie conceded a portion of the tips went to the overnight cleaning crew. *Neafie Depo*., p. 73, 24-25. Janitors, however, are not customarily and regularly tipped employees. *See, e.g., Kilgore,* 160 F.3d at 301. Because ineligible employees participated in the Bars' tip pool, the Bars cannot claim a tip credit. *Myers*, 192 F.3d at 548-49.

### b. The Bars' Charged for Walkouts and Shortages.

"Congress, in crafting the tip credit provision of section 3(m) of the FLSA did not create a middle ground allowing an employer both to take the tip credit and share employees' tips." *Chung*, 246 F.Supp.2d at 230. "Any arrangement whereby a tipped employee agrees that part of his or her tips become the property of the employer is inconsistent" with the FLSA's tip credit provisions. *See* DOL Wage & Hour Opinion Letter, 2006 WL 1910966 (June 9, 2006). "The FLSA does not permit an employer to transfer to its employees the responsibility for the expenses of carrying on an enterprise." *Priba Corp.*, 890 F.Supp. at 596 (*citing* 29 C.F.R. § 531.3(d)(2) & 29 C.F.R. § 531.32(c)).

6

The Bars nonetheless required Plaintiffs to pay for cash register shortages and for patrons who "walked out" on their tabs.  *See* Exhibit G.  By electing to receive a share of Plaintiffs' tips, the Bars became liable to Plaintiffs for the full minimum wage.  29 U.S.C. § 203(m)(2).  Therefore, the Bars owe each plaintiff the difference between the hourly wage paid and applicable minimum wage.  *Id.*

**4.     The Bars Failed to Pay Overtime.**

Employers must pay time and a half for hours worked in excess of forty in a workweek.  29 U.S.C. § 207.  The Bars are well aware of this requirement.  *Karam Depo.*, p. 10, l. 12-22.  Nonetheless, the Bars pay straight time for overtime.  *See* Exhibit D & H.  Therefore, the Bars violated the overtime requirements of the FLSA.

**5.     The Portion of Plaintiffs' Damages Which Is Readily Calculated Should Be Awarded at this Time.**

Though many of their records are inaccurate or incomplete, the Bars have produced some payroll records for some of the Plaintiffs.  Using these records, it is possible to calculate a portion of the wages owed to certain plaintiffs.  For example, the minimum wage damages owed for each hour reflected in the records can be calculated by subtracting the $2.13 in wages paid from the applicable minimum wage.  Similarly, the overtime premium owed for each scheduled hour can be calculated by multiplying the applicable minimum wage by ½.

The unpaid wages apparent on the face of the Bars' records are summarized in Exhibit H.  Although the state of the Bars' records precludes Plaintiffs' from seeking summary judgment for all their damages, the damages reflected in the Bars' records are not subject to reasonable dispute.  Therefore, summary judgment should be granted with respect to these damages.

**6.     Conclusion.**

The Bars knew about the minimum wage and overtime requirements of the FLSA but failed to abide by them.  Because many of the Bars' violations are beyond cavil, partial summary judgment is appropriate.

Respectfully submitted,

**BRUCKNER BURCH PLLC**

/S/ Rex Burch
By: _____
           Richard J. (Rex) Burch
           S.D. Tex. No. 21615
           State Bar No. 24001807
1415 Louisiana St., Suite 2125
Houston, Texas 77002
Telephone: (713) 877-8788
Telecopier: (713) 877-8065

**AND**

**DEBES LAW FIRM**
Robert R. Debes, Jr.
State Bar No. 05626150
Federal ID No. 12308
17 South Briar Hollow Lane,
Suite 302
Houston, Texas 77027
Telephone: (713) 623-0900
Facsimile: (713) 623-0951

**CERTIFICATE OF SERVICE**

A copy of this document was served on all parties via the Court's ECF system.

/S/ Rex Burch
_____
Richard J. (Rex) Burch