UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JOHNNY BERNAL, on Behalf of Himself and Others Similarly Situated,<br><br>Plaintiff,<br><br>VS.<br><br>VANKAR ENTERPRISES, INC., d/b/a, BABCOCK BAR, CHICAGO BAR, INC., and TDS ENTERTAINMENT, INC. d/b/a DIXIE'S COUNTRY BAR<br><br>Defendants. | Civil Action No. SA-07-CA-695-XR |

## ORDER

On this day, the Court considered Plaintiffs' Motion for Partial Summary Judgment (Docket No. 72) and the response and reply thereto. The primary issue before the Court is whether a genuine issue of material fact exists regarding Defendants' entitlement to use the amount of tips its employees received in satisfaction of a portion of Defendants' minimum wage obligations. Because the Court concludes that no genuine issue of material fact exists as to Defendants' lack of entitlement to take tip credits, the Court GRANTS Plaintiffs' motion in part and sets an evidentiary hearing on the issue of unpaid minimum wage damages that are readily calculable at this time. The Court VACATES the current trial setting.

### I. Background

Plaintiff, Johnny Bernal, brings this complaint, on behalf of himself and others similarly situated, against Defendants for alleged violations of the Fair Labor Standards Act (FLSA).[1] The identities of the Defendants are as follows: Defendant TDS Entertainment, Inc. is a Texas

---

[1] 29 U.S.C. §§ 201-219

Corporation that owns and operates Dixie's Country Bar; Defendant Chicago Bar, Inc. is a Texas Corporation that owns and operates the Chicago Bar; Defendant Vankar Enterprises, Inc. is a Texas Corporation that owns and operates Babcock Bar.

Bernal alleges in the live complaint that he previously worked as a server at each of the Defendants' bars and that the bars paid him an hourly wage that was less than the federal minimum wage.[2] Although Bernal received tips from customers while working at the bars, Bernal contributed a portion of those tips to a tip pool in accordance with the bars' policies or practices.[3] Bernal alleges that Defendants distributed a portion of the tip pools to managers and/or other employees who do not customarily and regularly receive tips.[4] According to Bernal, Defendants' tip pool practices disqualified Defendants from taking "tip credits" against their minimum wage obligations.[5] Therefore, Bernal claims Defendants violated the FLSA by paying him less than minimum wage, Bernal seeks to recover wages in an amount equal to the difference between the applicable minimum wage and the actual wage paid.[6]

Upon Bernal's motion, the Court, pursuant to 29 U.S.C. § 216, conditionally certified a class of "[a]ll current and former bartenders and servers employed by Defendants at any time from August

---

[2] First Am. Compl. (Docket No. 15) ¶¶ 8, 10. Defendants' records do not substantiate Bernal's claim that he worked at all three bars. *See* Docket No. 47 at 2-3. The dispute is immaterial to this Order.

[3] Docket No. 15 ¶¶ 11-12.

[4] *Id.* ¶ 13.

[5] *Id.* ¶¶ 13, 19.

[6] *Id.* ¶¶ 13, 19; *id.* at 4 (Prayer for Relief).

2

21, 2004 to the present."[7] Because the case is currently proceeding as a collective action, the Court refers to the class as "Plaintiffs" throughout this Order.

Plaintiffs now moves for summary judgment as to the following issues: (1) whether the bars failed to pay the applicable minimum wage under circumstances in which the bars were not permitted to claim a tip credit; and (2) whether the bars failed to pay overtime as required by the FLSA.[8] Plaintiffs also seek judgment awarding minimum wage damages that are readily calculable based on currently available records.[9]

## II. Analysis

### A. Standard of Review

A summary judgment movant must show by affidavit or other evidence that there is no genuine issue regarding any material fact.[10] To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense.[11] Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary

---

[7] See Docket No. 47.

[8] Pls.' Mtn. for Partial Summ. J. ("Pls.' Mtn.") (Docket No. 72) at 4-7.

[9] Id. at 7.

[10] Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

[11] Lavespere v. Niagra Machine & Tool Works, Inc., 910 F.2d 167, 178 (5th Cir. 1990), cert. denied, 510 U.S. 859 (1993).

3

judgment is inappropriate.[12]

In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant.[13] In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses" and disregarding the evidence favorable to the nonmovant that the jury is not required to believe.[14]

A.  **The FLSA**

The FLSA requires employers to pay employees a statutory minimum hourly wage.[15] For each hour an employee works in excess of 40 hours in a given week, employers must pay an overtime wage that is at least one and one-half times the employee's regular rate.[16] Under limited circumstances, however, an employer may pay a "tipped employee" an hourly wage that is less than the minimum wage.[17] Specifically, the employer may pay an employee an hourly wage of no less

---

[12] *See Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

[13] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4 (1986).

[14] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 152 (2000).

[15] 29 U.S.C. § 206(a). The minimum wage was $5.15 from September 1, 1997 to July 23, 2007 and $5.85 from July 24, 2007 to July 23, 2008. *Id.*

[16] *Id.* § 207(a).

[17] A "tipped employee" is any employee engaged in an occupation in which he customarily and regularly receives more than $30 per month in tips. 29 U.S.C. § 203(t).

4

than $2.13 if the amount of the tips the employee actually receives, added to the hourly wage the employer pays, is at least equal to the minimum wage in effect under section 206(a).[18] This practice is known as taking a "tip credit."

An employer may not, however, take a tip credit "with respect to any tipped employee unless such employee has been informed by the employer of the [tip credit] provisions" of section 203(m).[19] Moreover, no tip credit may be taken "with respect to any tipped employee unless ... all tips received by such employee have been retained by the employee," except in cases in which tips are pooled "among employees who customarily and regularly receive tips."[20]

B.  **Summary Judgment That Defendants Failed to Pay Plaintiffs the Minimum Wage is Granted.**

Plaintiffs seek summary judgment that Defendants failed to pay Plaintiffs the minimum wage required by the FLSA.[21] The parties do not dispute that Defendants paid Plaintiffs a direct hourly wage of $2.13—an amount that, standing alone, was at all times less than the federal minimum wage.[22] Defendants counter that, regardless of Defendants' entitlement to take tip credits, a genuine issue of material fact exists as to whether the sum of each Plaintiff's tips and direct wages equaled or exceeded the applicable minimum wage.[23] This argument is a misreading of the FLSA's tip credit provision, which, by its own term, "shall not apply with respect to any tipped employee *unless* such

---

[18] *Id.* § 203(m).

[19] *Id.*

[20] *Id.*

[21] Pls.' Mtn. at 4-7.

[22] *Id.* at 4; Defs.' Resp. to Pls.' Mtn. ("Defs.' Resp.") (Docket No. 81) at 2, 5.

[23] Defs.' Resp. at 4-6.

employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips."[24] The FLSA thus imposes two "predicates that must be satisfied even if the employee received tips at least equivalent to the minimum wage."[25] For this reason, courts have found violations of section 203(m) (and therefore of federal minimum wage laws) even where the employees were, in fact, paid the minimum wage once their tips were taken into account.[26]

Thus, the issue the Court must consider is whether Defendants satisfied the two prerequisites of section 203(m). Defendants, as the employers, bear the burden of proving that they are entitled to taking tip credits.[27] Therefore, at the summary judgment stage, Plaintiffs must merely point out that the evidence in the record is insufficient to support Defendants' entitlements to tip credits.[28] If Plaintiffs can satisfy this initial burden, Defendants must demonstrate that summary judgment is

---

[24] 29 U.S.C. § 203(m) (emphasis added).

[25] *Hai Ming Lu v. Jing Fong Rest., Inc.*, 503 F. Supp. 2d 706, 711 (S.D.N.Y. 2007). *See also Reich v. Chez Robert, Inc.*, 28 F.3d 401, 404 (3d Cir. 1994) (reversing district court's equitable reduction of employer's liability for full minimum wage where notice of intent to take tip credit was not given); *Martin v. Tango's Rest., Inc.*, 969 F.2d 1319, 1323 (1st Cir. 1992) ("It may at first seem odd to award back pay against an employer ... where the employee has actually received and retained base wages and tips that together amply satisfy the minimum wage requirements. Yet Congress has in section 3(m) expressly required notice as a condition of the tip credit and the courts have enforced that requirement."); *Chu Chung v. New Silver Palace Rest.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y.2002) ("The two prerequisites that the employer must fulfill to be eligible for the tip credit are strictly construed, and must be satisfied even if the employee received tips at least equivalent to the minimum wage.").

[26] *Hai Ming Lu*, 503 F. Supp. 2d at 711 (citing *Chu Chung*, 246 F. Supp. 2d at 229).

[27] *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979); *Chisholm v. Gravitas Rest. Ltd.*, Civil Action No. H-07-475, 2008 WL 838760, at *3 (S.D. Tex. March 25, 2008).

[28] *Lavespere*, 910 F.2d at 178.

inappropriate.[29]

Plaintiffs contend they are entitled to summary judgment that Defendants were not entitled to take tip credits, and therefore violated their minimum wage obligations, for each of the following reasons: (1) Defendants failed to inform Plaintiffs of the FLSA's tip credit provisions; (2) Defendants charged Plaintiffs for cash register shortages and walked tabs; and (3) Defendants required Plaintiffs to participate in a tip pool from which managers and janitors received tips.[30]

In support of their contention that Defendants failed to inform Plaintiffs of the tip credit provisions of the FLSA, Plaintiffs cite to the deposition testimony of Patrick Karam, the president of each of the bars. Karam testified that he established and follows the same pay policies with respect to servers at each bar.[31] Karam admitted that he does not personally inform any servers that the Defendants pay their servers in accord with the tip credit provisions of the FLSA and that nobody else has the responsibility of doing so.[32] Nor does Karam know whether anyone else at the bars attempts to inform servers how their wages are calculated.[33] Karam merely assumes servers employed by Defendants are aware of the FLSA's tip credit provisions because, according to Karam, most of Defendants' employees have prior experience working in the restaurant industry.[34]

Defendants do not counter with any evidence that Defendants affirmatively informed each

---

[29] *Fields*, 922 F.2d at 1187.

[30] Pls.' Mtn. at 5-7.

[31] Pls.' Mtn., Exhibit A at 23.

[32] *Id.* at 67-68.

[33] *Id.*

[34] *Id.*

server — or any server — of its practice of calculating wages. Rather, Defendants contend that its servers were aware that Defendants would take tip credits because the practice is "industry standard." In support, Defendants merely cite the same testimony of Karam that the Plaintiffs cited. Defendants did not submit any testimony from any of its servers or former servers that would suggest any server had prior awareness of Defendants' intent to take tip credits based on the alleged industry standard.[35]

Even if Defendants could produce sufficient evidence at this stage to support their point, which they have not, we agree with other courts that have found this argument unpersuasive.[36] The FLSA clearly charges the employer with an affirmative obligation in this respect. An employer may not take tip credits against their minimum wage obligations "with respect to any tipped employee unless such employee has been informed *by the employer* of the [tip credit] provisions."[37] Conversely, if we were to permit Defendants to substitute their statutory responsibility for an alleged general awareness of an industry-wide practice, the notice prerequisite of section 203(m) would be satisfied in every instance, and section 203(m) would be rendered mere surplusage. Therefore, Defendants' argument lacks factual support and legal merit.

Alternatively, Defendants contend that they satisfied their obligation to inform their employees because their payment "policy was disclosed on every paycheck earned by the

---

[35] Defs.' Resp. at 6-7.

[36] *See, e.g., Dominguez v. Don Pedro Rest.*, No. 2:06-cv-241, 2007 WL 2884370, at *2 (N.D. Ind. Sept. 26, 2007) ("Under the FLSA, an employer's intent to take advantage of the tip credit provision requires mandatory notice to an employee. Regardless of [the employee's] past employment, the FLSA demands the defendants inform him of the tip credit's application to his subsequent employment. Consequently, [the employee's] previous knowledge of the tip credit provision is irrelevant to the defense.").

[37] 29 U.S.C. § 203(m) (emphasis added).

8

employees."[38] Defendants fail to submit or cite to anything to support their contention. Nevertheless, the Court reviewed copies of various former employees' pay stubs and reprinted checks which Plaintiffs submitted in support of their motion.[39] Each reprinted check merely reveals a date, a payment amount, a check number, an employee's name, and Patrick Karam's signature. Each pay stub merely discloses the number of hours an employee worked during a given pay period, the employee's hourly wage ($2.13), the total amount of tips the employee received during the period, the employee's gross income (apparently[40] calculated as $2.13 times the number of hours worked), the employee's taxable income (apparently calculated as the sum of the employee's gross income and the employee's total tips), and amounts withheld for social security, medicare, and taxes.

Although an employer need not "explain" the tip credit to an employee, Courts have widely interpreted section 203(m) to require at a minimum that an employer inform its employees of its intention to treat tips as satisfying part of the employer's minimum wage obligations.[41] The Court cannot say that any reasonable juror would find that Defendants disclosed their intention on the face of the pay stubs or reprinted checks. Defendants have failed to demonstrate that a genuine issue of

---

[38]Defs.' Resp. at 6-7.

[39]Pls.' Mtn., Exhibit D.

[40]No formula is provided on the pay stubs for calculation of the gross income or taxable income figures.

[41]*See, e.g., Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 298 (6th Cir. 1998) ("[A]n employer must inform the employee that it intends to treat tips as satisfying part of the employer's minimum wage obligation."); *Martin v. Tango's Rest., Inc.*, 969 F.2d 1319, 1322 (1st Cir. 1992) ("We read section 3(m) to require at the very least notice to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations. It could easily be read to require more—for example, notice of 'the amount ... determined by the employer' to constitute wages—but how much more need not be decided in this case."); *Lentz v. Spanky's Rest. II, Inc.*, 491 F. Supp. 2d 663, 671 (N.D. Tex. 2007).

material fact exists as to whether Defendants informed Plaintiffs of the tip credit provisions of the FLSA.

Additionally and alternatively, summary judgment on the issue is appropriate because the unrebutted evidence establishes that Defendants deducted losses due to cash register shortages and unpaid tabs from Plaintiffs' "paycheck[s] or nightly tips."[42] To the extent Plaintiffs were not permitted to retain their tips to pay for shortages and unpaid tabs, Defendants disqualified themselves from taking advantage of the FLSA tip credit provisions.[43] Defendants were therefore not entitled to take tip credits, and summary judgment that Defendants failed to pay Plaintiffs the minimum wage as required by FLSA is GRANTED.[44]

---

[42] Pls.' Mtn., Exhibit G.

[43] 29 U.S.C. § 203(m); *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972); *Brennan v. Haulover Shark & Tarpon Club, Inc.*, No. 74-1276-Civ, 1986 WL 587, at *16 (S.D. Fla. Jan. 27, 1986).

[44] Although the Court need not rule on Plaintiffs' third ground for summary judgment on this issue, the Court notes that strong evidence suggests Defendants distributed Plaintiffs tips to employees who do not "customarily and regularly receive tips." The head bartender of one of Defendants' bars testified that he habitually distributed tip pool proceeds to the cleaning crew. *See* Pls.' Mtn., Exhibit E at 73. It is unlikely that the cleaning crew is composed of employees who "customarily and regularly receive tips," and Defendants do not argue to the contrary. Further, Plaintiffs cite to a document Defendants produced titled "Acknowledgment of Allocation Regarding Tips for Services Rendered." Pls.' Reply in Support of Pls.' Mtn., Exhibit A. The document appears to be a standard tip allocation policy which the bar's management company, Bar Staff Management, has its employees sign prior to their employment. Among other things, the policy states:

> [C]leaning duties will be allocated to a separate entity where an amount of up to $30.00 will be collected from the common tip pool and set aside for such cleaning services.
>
> [A] percentage of the common tip pool will be directly distributed to the Store Manager and that percentage will not be less than 10% nor will it exceed 50% of the common tip pool.

## C. Summary Judgment That Defendants Failed To Pay Proper Overtime Wages Is Granted.

Plaintiffs contend Defendants further violated the requirements of the FLSA by failing to pay Plaintiffs the proper overtime wage when appropriate. In support, Plaintiffs submit numerous copies of reprinted paychecks and pay stubs which apparently represent Defendants' wage payments to various Plaintiffs.[45] One of the pay stubs submitted, dated December 2, 2006, indicates that the employee worked 18 overtime hours, but that she was nevertheless paid a direct hourly wage of $2.13 for all hours that she worked during the pay period.[46] Minimum wage during this time period was $5.15 per hour, and minimum overtime pay required under the FLSA was one and one-half times this amount.[47] Therefore, Plaintiffs have submitted some evidence that Defendants failed to pay overtime wages as required by the FLSA.

Defendants do not rebut Plaintiffs' evidence or even address Plaintiffs' argument regarding Defendants' failure to pay overtime wages. As discussed above, Defendants have failed to establish

---

[A] percentage of the common tip pool may be distributed to door staff personnel.

The document, on its face, would provide strong evidence that Defendants were utilizing an invalid FLSA tip pool by distributing Plaintiffs' tips to management, janitors, and door staff personnel. The particular tip allocation policy document produced and submitted to the Court, however, was initialed and signed by an individual apparently prior to her employment at New York Bar, and no similar tip allocation policy has been submitted to the Court which purports to cover employees at Chicago Bar, Dixie's Country Bar, or Babcock Bar—the bars which employed the payment practices for which Defendants seek recovery. Nevertheless, Patrick Karam testified that he owns Dixie's Country Bar, Chicago Bar, Babcock Bar, New York Bar, and Boston Pub, and that he sets and follows the same payment policies at each bar. Pls.' Mtn., Exhibit A at 23; Defs.' Resp., Exhibit 1.

[45]Pls.' Mtn., Exhibit D.

[46]*Id.* at Bates #000821. No other pay stub submitted indicates that the respective employee worked any overtime hours during the pay period covered by the pay stub.

[47]29 U.S.C. §§ 206(a), 207.

11

their entitlement to take tip credits. Therefore, the unrebutted evidence on the record establishes Defendants failed to pay proper wages for overtime, and summary judgment is GRANTED on the issue.

Defendants, in their response, state summarily "defendants have concluded that not only is this case not subject to partial summary judgment for the plaintiffs but it is more suitable for summary judgment for the defense and also for decertification of the collective action."[48] Defendants provide no reasons in support. To the extent Defendants' statement can be construed as a motion for summary judgment and/or a motion to decertify the class, the motions are DENIED.

Finally, Plaintiffs seek minimum wage damages which are readily calculable at this time. The Court finds that an evidentiary hearing would be helpful on this issue. Accordingly, a hearing is set for Tuesday, October 21, 2008 at 9:30 A.M., in Courtroom No. 3, First Floor of the John H. Wood, Jr. Courthouse, 655 E. Durango, San Antonio, Texas 78206.

The Court VACATES the current trial setting.

It is so ORDERED.

SIGNED this 3rd day of September, 2008.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[48]Defs.' Resp. at 1-2.